# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN RE JEFFREY LANDRY, GOVERNOR, STATE OF LOUISIANA;
NANCY LANDRY, IN HER OFFICIAL CAPACITY AS LOUISIANA
SECRETARY OF STATE; AND ELIZABETH MURRILL, ATTORNEY
GENERAL, STATE OF LOUISIANA,

*Petitioners.*

On Petition for Writ of Mandamus from the
United States District Court for the Middle District of Louisiana,
No. 3:26-cv-460-JWD-SDJ

## OPPOSITION TO PETITIONERS' EMERGENCY
## PETITION FOR WRIT OF MANDAMUS AND MOTION
## FOR FULL STAY PENDING APPEAL

Nora Ahmed
Malcolm Lloyd
Charles Andrew Perry
Ashley Fox
ACLU FOUNDATION OF LOUISIANA
1340 Poydras St., Ste. 2160
New Orleans, LA 70112
(504) 522-0628
nahmed@laaclu.org
mlloyd@laaclu.org
aperry@laaclu.org
afox@laaclu.org

Margaret O. Rusconi
Pratik A. Shah
AKIN GUMP STRAUSS HAUER
 & FELD LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000
mrusconi@akingump.com
pshah@akingump.com

*Counsel for Respondent Calvin Duncan*
*Counsel continued on next page*

William P. Quigley
Professor Emeritus of Law
LOYOLA UNIVERSITY COLLEGE OF
  LAW
7214 St. Charles Avenue
New Orleans, LA 70118
(504) 710-3074
quigley77@gmail.com

Ronald L. Wilson
Attorney at Law
701 Poydras Street, Suite 4100
New Orleans, LA 70139
(504) 525-4361
cabral2@aol.com

Adina Marx-Arpadi
Kayla Vinson
CENTER FOR CONSTITUTIONAL
  RIGHTS
666 Broadway, 7 Fl.
New York, NY 10012
(212) 614-6464
amarxarpadi@ccrjustice.org
kvinson@ccrjustice.org

*Counsel for Respondent Calvin Duncan*

# CERTIFICATE OF INTERESTED PERSONS

No. 26-30249, *In re Jeffrey Landry et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **Petitioners**<br>Jeffrey M. Landry, Governor, State of Louisiana<br>Nancy Landry, Louisiana Secretary of State<br>Elizabeth B. Murrill, Attorney General, State of Louisiana | **Counsel for Respondent**<br>Pratik A. Shah<br>Margaret O. Rusconi<br>Akin Gump Strauss Hauer & Feld LLP<br>Nora Ahmed<br>Malcolm Lloyd<br>Charles Andrew Perry |
| **Counsel for Petitioner**<br>Jorge Benjamin Aguinaga<br>Louisiana Department of Justice | Ashley Fox<br>ACLU Foundation of Louisiana<br>Ronald L. Wilson<br>William P. Quigley<br>Loyola University College of Law |
| **Respondent**<br>Calvin Duncan | Adina Marx-Arpadi<br>Kayla Vinson<br>Center for Constitutional Rights |

/s/ *Margaret O. Rusconi*
Margaret O. Rusconi

*Counsel for Respondent Calvin Duncan*

**STATEMENT REGARDING ORAL ARGUMENT**

Given the heavy burden Petitioners bear and the circumstances of this case, Respondent Calvin Duncan believes the Court can deny the Petition for a Writ of Mandamus and Motion for Full Stay Pending Appeal without oral argument. If the Court nevertheless believes argument would be helpful, Duncan respectfully requests an opportunity to participate. *See* FED. R. APP. P. 34(a)(2).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................. i

STATEMENT REGARDING ORAL ARGUMENT ................................... ii

TABLE OF AUTHORITIES ................................................................... v

INTRODUCTION ................................................................................. 1

BACKGROUND .................................................................................... 6

    A.    Clerk Of Court Offices In Orleans Parish ..................... 6

    B.    Petitioners' Efforts To Prevent Duncan From
        Taking Office ................................................................. 7

    C.    Procedural History ....................................................... 12

ARGUMENT ....................................................................................... 16

    I.    THE DRASTIC AND EXTRAORDINARY REMEDY OF
        MANDAMUS IS NOT WARRANTED HERE ...................... 17

    A.    Mandamus Relief Is Neither Necessary Nor
        Appropriate In These Circumstances ......................... 17

        1.    *Petitioners point to no facts showing that a
            post-preliminary injunction appeal would be
            insufficient* ........................................................... 17

        2.    *Mandamus would allow the very harm the
            TRO was designed to address.* ........................... 23

    B.    Petitioners Cannot Show That The District Court
        "Clearly And Indisputably" Erred .............................. 27

        1.    *The district court correctly concluded that
            Duncan satisfied the* Ex parte Young
            *exception.* ........................................................... 28

        2.    *The district court correctly concluded that
            Duncan has standing.* ......................................... 32

        3.    *The district court correctly concluded that
            Pennhurst does not apply to Duncan's federal
            constitutional claims.* ......................................... 33

II. NO STAY IS WARRANTED PENDING RESOLUTION OF THE MANDAMUS PETITION ....................................... 35

CONCLUSION ....................................................................... 36

CERTIFICATE OF SERVICE............................................... 38

CERTIFICATE OF COMPLIANCE ...................................... 39

# TABLE OF AUTHORITIES

<u>**CASES:**</u>

*Air Evac EMS, Inc. v. Texas, Dep't of Ins.*,
  851 F.3d 507 (5th Cir. 2017)..............................................................30

*Book People, Inc. v. Wong*,
  91 F.4th 318 (5th Cir. 2024) .............................................................28

*Brown v. Georgia Dep't of Revenue*,
  881 F.2d 1018 (11th Cir. 1989)........................................................34

*Cannizzaro ex rel. State v. American Bankers Ins. Co.*,
  120 So. 3d 853 (La. Ct. App. 2013) ...................................................6

*Cheney v. United States Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) ..........................................................................16

*Dellinger v. Bessent*,
  No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025) ...................18

*Duncan v. Poythress*,
  657 F.2d 691 (5th Cir. 1981).............................................................13

*Dupuy v. Jones*,
  15 So. 2d 528 (La. Ct. App. 1943).....................................................29

*Everett v. Schramm*,
  772 F.2d 1114 (3d Cir. 1985) ............................................................35

*Ex parte Ayers*,
  123 U.S. 443 (1887)...........................................................................20

*Ex parte Young*,
  209 U.S. 123 (1908).................................................................*passim*

*In re Abbott*,
  954 F.3d 772 (5th Cir. 2020))...........................................................19

*In re al-Nashiri*,
  791 F.3d 71 (D.C. Cir. 2015).............................................................19

*In re All. Liftboats, L.L.C.*,
169 F.4th 638 (5th Cir. 2026) .............................................................. 17

*In re Dist. No. 1-Pac. Coast Dist., Marine Eng'rs' Beneficial
Ass'n (AFL-CIO)*,
723 F.2d 70 (D.C. Cir. 1983) ........................................................ 19, 20

*In re King World Prods., Inc.*,
898 F.2d 56 (6th Cir. 1990) ................................................................ 19

*In re Landry*,
83 F.4th 300 (5th Cir. 2023) ............................................................... 17

*In re Lloyd's Reg. N. Am., Inc.*,
780 F.3d 283 (5th Cir. 2015) .............................................................. 27

*In re Rutledge*,
956 F.3d 1018 (8th Cir. 2020) ............................................................ 19

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ............................................................. 20

*Inclusive Communities Project, Inc. v. Department of
Treasury*,
946 F.3d 649 (5th Cir. 2019) ............................................................. 33

*K.P. v. LeBlanc*,
627 F.3d 115 (5th Cir. 2010) ............................................................. 30

*Leonard v. Martin*,
38 F.4th 481 (5th Cir. 2022) ............................................................. 27

*Mi Familia Vota v. Ogg*,
105 F.4th 313 (5th Cir. 2024) ....................................................... 28, 32

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ........................................................................ 25

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) ...................................................... 5, 13, 33, 34

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
24 F.4th 442 (5th Cir. 2022) ....................................................... 34

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993) ..................................................................... 20

*South Wind Women's Ctr. LLC v. Stitt*,
808 F. App'x 677 (10th Cir. 2020) ............................................... 20

*State ex rel. Marrero v. Fortmeyer*,
13 Teiss. 148 (La. Ct. App. 1915) ................................................ 31

*Texas v. EEOC*,
933 F.3d 433 (5th Cir. 2019) ....................................................... 20

*United States v. Munsingwear, Inc.*,
340 U.S. 36 (1950) ....................................................................... 19

*Valentine v. Collier*,
956 F.3d 797 (5th Cir. 2020) ....................................................... 34

*Williams v. Zbaraz*,
442 U.S. 1309 (1979) (Stevens, J., in chambers) ....................... 16

*Word of Faith World Outreach Ctr. Church, Inc. v. Morales*,
986 F.2d 962 (5th Cir. 1993) ....................................................... 34

*Young v. Hosemann*,
598 F.3d 184 (5th Cir. 2010) ....................................................... 34

#### CONSTITUTION AND STATUTES:

LA. CONST.
art. V, § 28 ..................................................................................... 6
art. V, § 32 ..................................................................................... 6
art. X, § 30 ................................................................................... 24
arts. 137-139 (1879) ...................................................................... 6

28 U.S.C.
§ 1292(a)(1) ................................................................................. 17

La. Stat.

  §§ 13:901-13:918 ..................................................................... 6
  § 13:1371.2(A) ..................................................................... 10
  § 18:402(E) .................................................................. 11, 26
  § 18:422 ............................................................................. 6
  § 18:513(A)(5) ........................................................ 25, 28, 29
  § 18:602(A) ....................................................................... 26
  § 42:71 ......................................................................... 24, 29
  § 42:72 .............................................................................. 30
  § 42:73 .............................................................................. 30
  § 42:74 .............................................................................. 30
  § 42:75 .............................................................................. 30
  § 42:76 ......................................................................... 29, 31
  § 42:141(A) ...................................................................... 29
  § 42:162(A) ...................................................................... 24

**OTHER AUTHORITIES:**

11A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE
  § 2951 (3d ed. 2026) ........................................................ 18

Act 15, 2026 Law. Sess. Law Serv. (eff. Apr. 30, 2026) .......................... 12

Act 621, 2006 La. Reg. Sess. ................................................... 7

Act 845, 2014 La. Reg. Sess. ................................................... 7

Act 631, 2016 La. Reg. Sess. ................................................... 7

Brook, Jack, *A New Orleans candidate's murder conviction
  was tossed but the state still challenges his past*,
  ASSOCIATED PRESS (Oct. 8, 2025) ............................................ 9

Bruce, Matt, *Chelsey Napoleon sues mayor, city council,
  ratcheting up battle over Orleans clerk post*, THE
  ADVOCATE (May 12, 2026) .................................................. 15

Bruce, Matt, *Thrust into new role, Orleans Parish court clerk
  assures 'continuity' as election day nears*, THE ADVOCATE
  (May 7, 2026) ............................................................. 24

Choum, Bun, *New Orleans City Council appoints interim Orleans clerk, calls special election*, WDSU (May 11, 2026) .............. 26

FED. R. CIV. P. 65 ................................................................................ 14

Kasakove, Sophie, *New Orleans council taps interim clerk, sets special election as Murrill vows to block move*, THE ADVOCATE (May 11, 2026) ................................................................ 15

LaRose, Greg, *Former 'prison lawyer' wins Orleans clerk of court election*, LA. ILLUMINATOR (Nov. 15, 2025) .................................. 9

Liptak, Adam, *A Relentless Jailhouse Lawyer Propels a Case to the Supreme Court*, N.Y. TIMES (Aug. 5, 2019) ............................... 8

National Registry of Exonerations, *Calvin Duncan* (Jan. 31, 2023) ...................................................................................................... 8

Siddiqui, Anum & Cassie Schirm, *Orleans Parish clerk of court speaks following law eliminating Calvin Duncan's position*, WDSU (May 7, 2026) ..................................................... 15, 23

**INTRODUCTION**

Petitioners ask this Court to deploy "one of the most potent weapons in the judicial arsenal" to undo a 14-day temporary restraining order (TRO) entered after an expedited proceeding, despite preliminary-injunction proceedings on the horizon. If that were not bad enough, Petitioners' case for this extraordinary relief rests on a description of the limited TRO—tailored simply to prevent them from enforcing the new law by certifying and commissioning someone to fill the newly created office without election—that bears little resemblance to its text. Worse still, Petitioners cannot identify any "clear and indisputable" error in the district court's decision, especially given that Louisiana law very clearly outlines Petitioners' authority to constrain who assumes the responsibilities of public office, and Petitioners are actively threatening to exercise that enforcement authority. Put simply, there is no reason this Court should resort here to the drastic remedy of mandamus (or a stay that has the same effect).

In November 2025, Calvin Duncan—a Black man and criminal justice advocate who was exonerated of murder after 28 years in prison—won the seat of Orleans Parish criminal clerk of court with 68% of the

1

vote. Days before he was set to take office, though, the Louisiana legislature passed a bill targeted to prevent him from assuming his duly elected role. As amended, the "Landry Bill" abolished the Orleans criminal clerk of court office, created a new consolidated clerk of court office, and declared that the sitting civil clerk of court would fill the new consolidated clerk of court office. And it took effect immediately. Neither the mastermind nor the purpose was a secret: The Bill's own sponsor admitted on the Senate floor that the proposal was Governor Landry's and that the goal was to "go ahead and get [the Bill enacted into law] before Mr. Duncan takes office." In one fell swoop, the Bill sought to both nullify a past election and thwart a required election for the new office it created.

What followed the Bill's passage was a whirlwind. Within four days, Duncan filed suit and sought a TRO against Governor Landry, Secretary of State Landry, and Attorney General Murrill; Governor Landry signed the Bill into law; the parties briefed Duncan's TRO; and the district court issued a 49-page opinion granting it. Specifically, the district court entered a time-limited, status-quo-preserving TRO enjoining Governor Landry and Secretary of State Landry only from

2

certifying and commissioning the Orleans civil clerk of court as the new consolidated clerk of court. As the district court explained:

> This [TRO] is not about whether the legislature can create the Orleans Clerk of Court seat. Arguably, if the legislature follows the law, they can create a new seat. But what Defendants cannot do through the legislature is fill that newly-created clerk of court seat, which requires an election, themselves. That is the problem at issue—the targeted and concerted attempt to [] unlawfully nullify Plaintiff Calvin Duncan's vote as an Orleans Parish voter for the Clerk of Criminal District Court seat by attempting to retroactively invalidate a completed election.

Petitioners now seek mandamus and a stay pending appeal. But they fail to satisfy any of the conditions for such extraordinary relief. To begin, Petitioners have the prescribed obvious and adequate alternative to mandamus—challenge Duncan's forthcoming preliminary-injunction motion and, if unsuccessful, appeal. Petitioners identify no concrete, time-sensitive harm that justifies leapfrogging that process. They instead offer contradictory descriptions of the TRO's effect and misattribute to the TRO "chaos" that was actually caused by the Landry Bill's own rushed and unplanned consolidation.

Petitioners also misconstrue what would happen if the TRO were back in place. To be sure, the civil clerk of court could not legally assume the new "clerk of court" role. But that does not mean there would be no

3

one performing the duties of the criminal clerk of court. Duncan maintains (and will argue in his preliminary-injunction motion) that allowing his immediate assumption of those duties would best preserve the pre-Landry Bill status quo. But even assuming he cannot assume them, Louisiana's Election Code already provides a well-established framework for filling vacancies in newly created offices: The local governing authority (here, New Orleans City Council) is supposed to appoint a qualified person to fill the vacancy on an interim basis within 20 days (which it has now done). So there is no gap mandamus is needed to fill.

What's more, Petitioners cannot point to any "clear and indisputable" flaw in the district court's decision. In fact, Petitioners do not even challenge the merits of the district court's finding that the Landry Bill is unconstitutional—focusing instead on the court's jurisdictional holdings alone. Specifically, Petitioners claim that they lack any ability to enforce the Landry Bill, so the *Ex parte Young* exception to sovereign immunity does not apply. 209 U.S. 123, 157 (1908). They contend that the same lack of enforcement power deprives Duncan of Article III standing. And they maintain that the TRO violates

4

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). But Petitioners do not—and cannot—argue that the district court failed to consider these arguments, or even gave them short shrift. The court carefully considered them all; it simply rejected them. The court was fully correct in doing so; at a minimum, it committed no "clear and indisputable" error, or one that requires going outside the normal appellate process.

Given all these flaws, the Court should deny the Petitioners' mandamus request forthwith and deny their stay motion as moot. The same arguments establish that a stay is not warranted, either. Petitioners are not likely to succeed on the merits of the mandamus request; they do not point to any irreparable harm; and the balance of the equities clearly favor enjoining enforcement of an unconstitutional law.

This Court should lift its administrative stay, deny the Petition and Motion for Full Stay Pending Appeal, and allow further proceedings to continue in the district court.

## BACKGROUND

### A.    Clerk Of Court Offices In Orleans Parish

In Louisiana, district court clerks are elected officials with two primary roles: chief record custodian and chief election officer. LA. CONST. art. V, § 28; LA. STAT. §§ 13:901-13:918; *id.* § 18:422. Most parishes have only one clerk of court. But "Orleans Parish is unique in that there are separate civil and criminal courts." *Cannizzaro ex rel. State v. American Bankers Ins. Co.*, 120 So. 3d 853, 856 (La. Ct. App. 2013). The State's 1879 Constitution established a "Civil District Court" with "jurisdiction over civil issues only" and a "Criminal District Court" with "criminal jurisdiction only." *Id.* Clerk (and sheriff) offices were thus similarly bifurcated. LA. CONST. arts. 137-139 (1879). And the State's 1974 Constitution "continued" that bifurcation, while giving the legislature the power to change it through lawmaking. LA. CONST. art. V, § 32.

To Duncan's knowledge, the legislature has never before exercised its authority to consolidate offices in Orleans effective immediately. Nor has it dictated who would fill a newly consolidated position of elected office. To the contrary, when the legislature merged Orleans municipal

6

and traffic courts into one consolidated court in 2014 and reduced the number of judgeships from eight to seven in 2017, it used multi-year implementation windows—setting the effective dates out three and four years, respectively. *See* Act 845, 2014 La. Reg. Sess. (courts); Act 631, 2016 La. Reg. Sess. (judges). So, too, when it consolidated the Orleans Parish civil and criminal sheriff offices in 2006—it set the effective date for the start of the 2010 term, thereby ensuring the civil and criminal sheriffs could serve the terms for which they had been recently elected and allowing for an election to decide the holder of the new consolidated position. Act 621 §§ 1, 23, 2006 La. Reg. Sess.

### B. Petitioners' Efforts To Prevent Duncan From Taking Office

**1.** Calvin Duncan's experience with the Orleans Parish criminal clerk of court began decades ago. In 1985, he was wrongfully convicted of first-degree murder and sentenced to life in prison. Dist.Ct.ECF 1, ¶¶ 26-27 (Verified Compl.). While incarcerated, Duncan tried to clear his name, but he was never able to access his own case records due to the criminal clerk of court office's mismanagement of files. *Id.* ¶ 31. Those recordkeeping failures—and the consequences they can carry—later became central to Duncan's advocacy and campaign for clerk.

7

The Innocence Project of New Orleans agreed to take on Duncan's case in 2004, and he was freed in 2011. Dist.Ct.ECF 1, ¶¶ 32-34. He was then formally exonerated in 2021, when a judge vacated his conviction under a recent "factual innocence" statute. *See* Dist.Ct.ECF 1-3; The National Registry of Exonerations, *Calvin Duncan* (Jan. 31, 2023).

Since his release, Duncan has earned an undergraduate degree and law degree. Dist.Ct.ECF 1, ¶¶ 42-44. He has also become a vocal critic of the State's criminal justice system. *Id.* ¶¶ 36-45. He played a pivotal role in ending the State's use of nonunanimous juries. *Id.* ¶¶ 39-41; *see also* Adam Liptak, *A Relentless Jailhouse Lawyer Propels a Case to the Supreme Court*, N.Y. TIMES (Aug. 5, 2019).[1] And he has repeatedly spoken out about the mismanagement of court records by the criminal clerk of court office and the injustices such mismanagement allows. Dist.Ct.ECF 1, ¶ 45.

**2.** Duncan's troubles with Petitioners began in 2023. That year, he sought $330,000 in damages for his wrongful conviction, and Attorney General Murrill responded by threatening to contest Duncan's ability to

---

[1] https://www.nytimes.com/2019/08/05/us/politics/supreme-court-nonunanimous-juries.html.

practice law if he did not drop his claim. *See* Jack Brook, *A New Orleans candidate's murder conviction was tossed but the state still challenges his past*, ASSOCIATED PRESS (Oct. 8, 2025).[2] Faced with the Attorney General's threat, Duncan reluctantly followed her direction. *Id.*

Duncan, however, did not stop his advocacy efforts. In 2025, he ran for Orleans Parish criminal clerk of court on a platform centered on the office's improper recordkeeping and its role in wrongful convictions like his own. *See* Dist.Ct.ECF 1, ¶ 51.

Apparently not content to let the democratic process play out, Attorney General Murrill took the extraordinary step of publicly attacking Duncan in the lead up to the election. She threatened retaliation in a letter and statements to the press, demanding that Duncan "cease representing to the public that [he] w[as] 'exonerated' to avoid further action from [her] office." Dist.Ct.ECF 1, ¶¶ 58-65.

Her campaign did not work, though. In November 2025, Duncan beat incumbent clerk Darren Lombard with 68% of the vote—a decisive victory. *See* Dist.Ct.ECF 1, ¶¶ 53-54; Greg LaRose, *Former 'prison*

---

[2] https://apnews.com/article/new-orleans-election-calvin-duncan-exoneratedmurder-73d617069d9d66daffc7576bdb2b6350.

*lawyer' wins Orleans clerk of court election*, LA. ILLUMINATOR (Nov. 15, 2025).[3]  By April 2026, Duncan had received his commission certificate, taken his oath of office, and was set to take office on May 4, 2026. Dist.Ct.ECF 1, ¶ 56; LA. STAT. § 13:1371.2(A).

3.  With time running out, in spring 2026, Governor Landry directed State Senator Jay Morris—whose district is more than 200 miles from New Orleans—to introduce the "Landry Bill," a proposal to combine the Orleans civil and criminal clerk of court positions into a new singular clerk of court.  Dist.Ct.ECF 1, ¶¶ 68-69.  The purpose was clear: prevent Duncan from taking office.  *Id.*

Despite claiming the Landry Bill would address "inefficiencies," Senator Morris admitted during the April 8 floor debate that there were no studies that pointed to any inefficiencies in the bifurcated system, that the fiscal note was actually "indeterminate," and that the integration process "c[ould] take a long time."  Dist.Ct.ECF 1-5, at 7, 9, 12.  Leaving no doubt about the real motivation, soon after introducing the Bill, Senator Morris proposed an amendment—also at the behest of Governor Landry—providing for the Bill to take effect immediately upon the

---

[3] https://lailluminator.com/2025/11/15/duncan-clerk.

Governor's signature.  Dist.Ct.ECF 1, ¶¶ 75-76.  As Senator Morris himself said, the goal was "[t]o *** [g]o ahead and get [the Bill passed into law] before Mr. Duncan takes office."  Dist.Ct.ECF 1-5, at 16-17; *see also id.* at 16 (explaining Bill was governor's proposal).

But the Bill needed yet further editing to accomplish what Petitioners wanted.  Under the Bill as then written, the newly created clerk of court position would be vacant—meaning Louisiana law would require an election to fill the vacancy.  *See* LA. STAT. § 18:402(E) ("Special elections to fill newly created offices or vacancies in office shall be held on dates fixed by the appropriate authority in the proclamation issued in accordance with law.").  Thus, in an apparent attempt to not only negate the election Duncan *did* win, but also avoid a special election Duncan *might* win, a House member introduced a last-minute second amendment—also at Governor Landry's behest—providing that the sitting civil district court clerk would become the new clerk of court when the incumbent criminal district court clerk's term concludes "at the end of May 3, 2026."  Dist.Ct.ECF 2-5, at 4; Dist.Ct.ECF 1, ¶¶ 91-94.

On April 29, 2026, the legislature sent the full package to Governor Landry's desk for signature.  Dist.Ct.ECF 1, ¶ 94.

## C. Procedural History

**1.** Duncan filed suit against Petitioners Attorney General Murrill, Secretary of State Landry, and Governor Landry that same day, Dist.Ct.ECF 1, and simultaneously moved for a TRO to preserve the status quo, Dist.Ct.ECF 2-1. In support of his motion, Duncan focused on his claims that (1) the Bill nullified his vote as an Orleans Parish voter—not just once, but twice over—in violation of the First and Fourteenth Amendments, and (2) the Bill was retaliation for Duncan's protected speech. *Id.*

But there was no opportunity for meaningful fact-gathering or comprehensive briefing. Governor Landry signed the Bill into law the next day. *See* Act 15, 2026 Law. Sess. Law Serv. (eff. Apr. 30, 2026). With the 11:59 p.m. May 3 deadline looming, the district court ordered Petitioners to file any response by noon on May 1, and Duncan to file any reply by 8:00 a.m. on May 3. *See* Dist.Ct.ECF 13, at 9.

**2.** Despite "that extraordinarily truncated and expedited timeline," on the evening of May 3, the court issued a 49-page opinion and order granting Duncan's motion and rejecting the same jurisdictional arguments Petitioners raise here. *See* Dist.Ct.ECF 13, at 9. Specifically,

the court found that (1) Duncan has satisfied the *Ex parte Young* exception as to the Governor and Secretary of State because their statutory duties to certify elections and issue commissions gave them a sufficient enforcement connection to the Bill, *id.* at 15-16; (2) Duncan had standing, as his injuries were traceable to the Governor and Secretary of State's certification and commissioning roles and redressable by an order preventing the issuance of a commission to the civil clerk of court, *id.* at 20-22; and (3) the TRO would not violate the *Pennhurst* doctrine because, although Duncan's claims involve Louisiana law, they sound exclusively in the federal constitution, *id.* at 23-25.

The district court then concluded that Duncan had satisfied the factors for a TRO: He was "substantially" likely to succeed on his voting rights claim based on binding precedent from this Court. Dist.Ct.ECF 13, at 32-44 (discussing *Duncan v. Poythress*, 657 F.2d 691 (5th Cir. 1981)). That "clear constitutional violation" satisfied the irreparable injury requirement. *Id.* at 46. And the balance of the equities favored a TRO, because "the State has no interest in enforcing its unconstitutional conduct," and Orleans voters have "a significant interest in ensuring that

their votes are not nullified and that they have an opportunity to vote for a newly created clerk of court office." *Id.*

The district court thus issued a TRO enjoining Governor Landry and Secretary of State Landry from (1) enforcing the Bill; (2) certifying the civil clerk of court as the new clerk of court; and (3) issuing the civil clerk of court a commission for the new clerk of court office. Dist.Ct.ECF 13, at 48. Consistent with Federal Rule of Civil Procedure 65, the court limited the order to a 14-day period and scheduled a status conference for the next day "to discuss issues associated with a preliminary injunction." *Id.* at 49.

**3.** Petitioners, however, did not wait for the preliminary injunction process to play out. They instead raced to this Court that same night and filed an Emergency Petition for a Writ of Mandamus and Motion for Immediate Administrative Stay and Full Stay Pending Appeal, describing the TRO outlined above as "flagrantly usurping Louisiana's sovereignty by purporting to strike an enacted law from existence in service of an office that the Legislature abolished." Pet. 2. The Court granted their administrative stay request the next morning, Doc. 14-1, and the district court cancelled the status conference, Dist.Ct.ECF 14.

There have been several developments in the week that has followed. The civil clerk of court (Chelsey Richard Napoleon) has purported to assume the new role of clerk of court, a transition she says will pose some "challenges." Anum Siddiqui & Cassie Schirm, *Orleans Parish clerk of court speaks following law eliminating Calvin Duncan's position*, WDSU (May 7, 2026).[4] Attorney General Murrill sent a letter to New Orleans City Council threatening legal action if it appointed an interim clerk of court or called a special election. *See* Sophie Kasakove, *New Orleans council taps interim clerk, sets special election as Murrill vows to block move*, THE ADVOCATE (May 11, 2026).[5] The City Council then did precisely that—appointing retired-Judge Calvin Johnson as interim clerk, pending a special election in November. *Id.*[6] Petitioners have also asked the Louisiana Supreme Court to "declare that Ms.

---

[4] https://www.wdsu.com/article/orleans-parish-clerk-of-court-transition-bill-court-merging/71243742.

[5] https://www.nola.com/news/politics/calvin-johnson-clerk-of-court/article_e5692c1f-5497-4726-b1d4-1d07b2264b93.html.

[6] Napoleon has since challenged that interim appointment in Louisiana state court. Matt Bruce, *Chelsey Napoleon sues mayor, city council, ratcheting up battle over Orleans clerk post*, THE ADVOCATE (May 12, 2026), https://www.nola.com/news/clerk-chelsey-napoleon-sues-new-orleans-over-call-for-election/article_07d35f8c-b8f9-4b26-969b-1abcca30efd8.html.

Napoleon is the lawful Orleans clerk of court" in a still-pending writ application. *See* Emergency Appl. for Supervisory Writs of the State of La. & Its Offs. for Expedited Consideration 9, *Crockett v. Louisiana*, No. 2026-CV-594 (La. S. Ct. May 8, 2026).[7]   Meanwhile, preliminary injunction proceedings are imminent.

It is against this evolving backdrop that Petitioners' request for mandamus and a stay pending appeal must be evaluated.

## ARGUMENT

To obtain the relief they seek, Petitioners must show that this appeal presents an "extraordinary" situation warranting an "extraordinary" response. *Cheney v. United States Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004); *Williams v. Zbaraz*, 442 U.S. 1309, 1311 (1979) (Stevens, J., in chambers).  Table-banging rhetoric aside, it does not.  Any extraordinary consequences arise not from the TRO, but from the unconstitutional law's unprecedented eleventh-hour attempt to thwart the will of Louisiana voters twice over.

---

[7] *See* Attach. A.

16

## I. THE DRASTIC AND EXTRAORDINARY REMEDY OF MANDAMUS IS NOT WARRANTED HERE

Because mandamus is "one of the most potent weapons in the judicial arsenal," this Court has said that "three conditions must be satisfied before [it] may be issued." *In re Landry*, 83 F.4th 300, 304 (5th Cir. 2023) (internal quotation marks omitted). The petitioner must not have any "other adequate means to attain the relief he desires"; the writ must be "appropriate under the circumstances"; and the petitioner must "demonstrate[] 'a clear and indisputable right to the writ.'" *In re All. Liftboats, L.L.C.*, 169 F.4th 638, 640 (5th Cir. 2026). None of these requirements is satisfied here.

### A. Mandamus Relief Is Neither Necessary Nor Appropriate In These Circumstances

*1. Petitioners point to no facts showing that a post-preliminary injunction appeal would be insufficient.*

**a.** Consider first the posture of this case. Given the extremely short timeline precipitated by the new law's April 30 enactment, the district court entered a TRO—by definition, the most time-limited form of injunctive relief available. It was set to expire on May 17, with more comprehensive preliminary-injunction proceedings to follow. Dist.Ct.ECF 13, at 49; 28 U.S.C. § 1292(a)(1). "[O]bviously," then,

17

Petitioners "ha[ve] other adequate means to attain the relief [they] seek": persuade the district court to deny a preliminary injunction and, if that fails, appeal. *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *8 (D.C. Cir. Feb. 15, 2025).

Petitioners suggest that contesting Duncan's forthcoming preliminary injunction would be futile because "[t]hey already raised" their jurisdictional arguments in opposition to the TRO, and the district court rejected them. Pet. 22. But that argument would justify turning every interlocutory decision into a race for mandamus. Besides, "[t]he key characteristic of [a] temporary restraining order is its urgency." 11A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2951 (3d ed. 2026). Any "hearings [are] summary, and the time for decision short." *Id.* That is precisely why TROs expire and subsequent preliminary injunction proceedings exist—to allow the parties and the court the opportunity to revisit arguments with the benefit of a more complete record, fuller briefing, and more time than the four days the district court had here.

Indeed, that guaranteed second bite explains why mandamus is generally not the appropriate response to a TRO; "it might be a sufficient

remedy to wait until the expiration of the TRO, and then appeal an adverse preliminary injunction." *In re Abbott*, 954 F.3d 772, 794 (5th Cir. 2020) (judgment vacated under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)); *In re Rutledge*, 956 F.3d 1018, 1026 (8th Cir. 2020) (same).

**b.** The out-of-circuit cases Petitioners cite (at 22) do not suggest otherwise. They simply confirm that, when other avenues for review exist, mandamus is appropriate only if the petitioner can "identify some 'irreparable' injury that will go unredressed" without relief. *In re al-Nashiri*, 791 F.3d 71, 79 (D.C. Cir. 2015). Mandamus review was thus appropriate in *Rutledge* because the TRO had enjoined a state emergency directive issued to slow the spread of COVID-19, and the "tide of COVID-19 cases and deaths" was "surging." 956 F.3d at 1026. And it was appropriate in *In re King World Prods., Inc.* because the TRO had indisputably restrained the petitioner's speech. 898 F.2d 56, 59 (6th Cir. 1990).[8]

---

[8] *In re Dist. No. 1-Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n (AFL-CIO)*, 723 F.2d 70 (D.C. Cir. 1983), does not help Petitioners, either. The court there found mandamus inappropriate because the TRO "effectively amounted to a preliminary injunction." *Id.* at 74. The footnote Petitioners invoke—suggesting mandamus might lie if the

Petitioners here point to no comparable injury or concrete time-sensitive threat.  *Cf. South Wind Women's Ctr. LLC v. Stitt*, 808 F. App'x 677, 681 (10th Cir. 2020) (refusing to treat TRO against state officials as appealable injunction when officials' claimed harm "lack[ed] *** evidentiary certainty").  They instead rely primarily on their contested jurisdictional arguments, contending that the TRO causes them and the State of Louisiana "immediate and irreparable harm" because it violates sovereign immunity and functions as a "federal judicial veto" of a duly enacted Louisiana law.  Pet. 22-23.

But Petitioners cite no cases supporting the notion that the rejection of sovereign-immunity defenses like theirs constitutes the type of injury warranting mandamus relief—especially in the TRO context. *See* Pet. 22-23; *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (discussing availability of collateral order doctrine); *Ex parte Ayers*, 123 U.S. 443, 496 (1887) (considering petitions for writs of habeas corpus); *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019) (finding state satisfied injury-in-fact requirement for standing); *In*

---

district court had been "stripped" of jurisdiction—is plain dicta.  *Id.* at 77 n.8.

*re Volkswagen of Am., Inc.*, 545 F.3d 304, 307 (5th Cir. 2008) (mandamus case involving neither state petitioners nor a TRO).

That is not to say an alleged violation of state sovereignty can *never* amount to the type of extraordinary harm for which mandamus is appropriate. But disputed sovereign-immunity arguments, standing alone, cannot suffice. To hold otherwise would effectively create a state-officials exception to the normal rules for both TROs and mandamus alike.

**c.** Petitioners' other claims about the TRO's effects border on nonsensical. As a refresher, the TRO provides that:

> Defendants Governor Jeff Landry and Secretary of State Nancy Landry are **ENJOINED** from (1) enforcing SB 256 [*i.e.*, the Landry Bill]; (2) certifying the appointment of the Clerk of Civil District Court for the Parish of Orleans as the Clerk of Court for the Parish of Orleans; and (3) issuing the Clerk of Civil District Court a commission for the position of Clerk of Court for the Parish of Orleans.

Dist.Ct.ECF 13, at 48. That is it.

Petitioners decry the order as an "extraordinary (perhaps unprecedented) intrusion upon Louisiana's sovereignty," describing it as a federal "veto" that "purport[s] to strike an enacted law from existence" and "threaten[s] disarray." Pet. 2, 5, 7. Yet elsewhere, Petitioners take

21

the opposite position, saying the order "does exactly nothing of substance" because Petitioners "have no enforcement role" at all with respect to the Landry Bill, and have no intention or need to certify or commission the civil clerk of court as the new clerk of court. *Id.* 5-6, 12, 20. Petitioners cannot have it both ways.

In any event, the order's actual text makes clear that it does not "purport[] to strike" the Landry Bill from existence, or "enjoin" the law itself. Pet. 5. Nor does it compel the State to take any action. The TRO temporarily restrains two named officials from implementing (or "enforcing") the Landry Bill generally, focusing on only two specific acts—the certification and commission of the civil clerk of court for the newly created position—nothing more. That is a far cry from the sweeping federal intrusion Petitioners describe.

Moreover, the "chaos" and "disarray" Petitioners predict (at 26-27) was effectively guaranteed by the Landry Bill itself. The Bill required the consolidation of two different offices, using different case-management systems, that had been separate since 1879. And it did so with "no plan, no path for transition, effective immediately." Dist.Ct.ECF 1-5, at 19. Worse still, it did so just days before Duncan—

22

who had been the criminal clerk of court-elect for 165 days, and who had already been commissioned and sworn in—was set to take office. *See supra*, pp.9-10. Indeed, Petitioners' own argument shows why prior laws consolidating public offices had multi-year implementation windows, *see supra*, pp.6-7—that approach avoided the disorder (and constitutional violations) the Landry Bill has caused.

Were there any doubt about the Landry Bill's effect, look at what has happened since the TRO was stayed. As the purported new "clerk of court," Napoleon has had to "travel[] between offices" and "underg[o] a crash course to prepare for her expanded duties." Siddiqui & Schirm, *Orleans Parish clerk of court speaks*, *supra*, p.15. As she explained to reporters, the "transition is happening without a planning period, and with that comes challenges." *Id.*

The currently-administratively-stayed TRO did not create those challenges. And if the TRO's restraints really "accomplish *** nothing," as Petitioners say (at 20), then the TRO will cause them no harm at all.

> 2. *Mandamus would allow the very harm the TRO was designed to address.*

Of course, Petitioners' claim that the TRO "does nothing" is wrong. The TRO prevents one specific thing: certifying and commissioning to the

23

new Orleans clerk of court seat an individual not elected to that office before the court can consider Duncan's constitutional claims. Dist.Ct.ECF 13, at 48. Mandamus, however, would clear the path.

The risk is not hypothetical. Since this Court's administrative stay, Napoleon has already purported to assume the newly created office. *See* Matt Bruce, *Thrust into new role, Orleans Parish court clerk assures 'continuity' as election day nears*, THE ADVOCATE (May 7, 2026).[9] And though Petitioners now disclaim any intent to certify or commission Napoleon as the new clerk of court, Pet. 5, 15-16, Louisiana law requires that she receive a commission to lawfully serve. Under Revised Statute § 42:71, "[a]ny person who assumes or pretends to be a public officer without the authority of an election, or without the authority of a commission from the governor when a commission is required *** is a usurper." The Louisiana Constitution also requires all officials take an oath of office tailored to their specific office, LA. CONST. art. X, § 30, which must be "certified in [the official's] commission by the person administering it," LA. STAT. § 42:162(A). Without the TRO, nothing

---

9    https://www.nola.com/news/new-orleans-court-clerk-reassures-voters-new-role/article_bc398422-ab52-4185-b4ab-fbdd09718a30.html.

24

prevents Petitioners from implementing that process. *See infra*, pp.28-30.[10]

There is more: The start of Napoleon's term is arguably tied to the date on which she receives her commission and takes the oath. *See* LA. STAT. § 18:513(A)(5) (commission shall issue "on the date the term begins"). Thus, if Petitioners certify and commission Napoleon, it would not merely formalize her installation—it would potentially commence her term, thus introducing an unnecessary complication into this case as it proceeds.

To be clear, none of this is to suggest that, under the district court's TRO, no one could assume the duties of the criminal clerk of court. *Contra* Pet. 27 (claiming an order precluding Napoleon from office would mean Orleans parish has no clerk of court). It only precludes Petitioners from authorizing *Napoleon* to do so.

Duncan maintains—and plans to argue in his forthcoming preliminary-injunction motion—that Petitioners also should be enjoined

---

[10] If Petitioners succeed in this Court based on their "no need or intent to certify or commission Napoleon" argument, they should be judicially estopped from later "assum[ing] a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

from using their authority to bring criminal or civil actions against him for assuming the duties of the criminal clerk of court office. *See infra*, pp.28-30 (outlining Petitioners' numerous enforcement authorities). Such relief would bar Petitioners' enforcement of the Landry Bill's immediate abolition of the office to which Duncan was elected, certified, and commissioned. And it would allow Duncan to fulfill the responsibilities of the office while this case is litigated.

The TRO does not create a void until then. Louisiana law already provides a well-trod process for precisely this sort of situation: Under Revised Statute § 18:602(A), when a vacancy occurs in Orleans Parish, the New Orleans City Council is responsible for filling the vacancy on an interim basis within 20 days. *See* LA. STAT. § 18:402(E).[11]

---

[11] In fact, the City Council has already done this. On Monday, May 11, 2026, the Council voted to appoint a retired judge as the interim clerk of court and announced plans to hold a special election this fall. *See supra*, p.15; *see also* Bun Choum, *New Orleans City Council appoints interim Orleans clerk, calls special election*, WDSU (May 11, 2026), https://www.wdsu.com/article/new-orleans-city-council-appoints-interim -orleans-clerk-calls-special-election-calvin-johnson/71272592 ("[Council] argued that appointing an interim clerk and setting a special election is the clearest way to protect the will of Orleans Parish voters while the legal questions are sorted out.").

In short, there are orderly processes available to ensure the responsibilities of the criminal clerk of court are fulfilled during the pendency of this case. Granting mandamus (or a related stay of the TRO), on the other hand, would allow Petitioners to install an unelected official by fiat, sowing the very chaos of which Petitioners warn.

**B.** **Petitioners Cannot Show That The District Court "Clearly And Indisputably" Erred**

Even setting aside all the above, this Court can deny the Petition because Petitioners have not shown a "clear and indisputable" right to the writ. *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022). That condition "require[s] more than showing that the district court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *Id.* (alteration in original). "[E]ven reversible error by itself is not enough." *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015). Petitioners "must show a clear abuse of discretion that produces patently erroneous results, or exceptional circumstances amounting to a judicial usurpation of power." *Leonard*, 38 F.4th at 489 (internal quotation marks, alterations, and citations omitted). They cannot. Indeed, Petitioners do not even challenge the

merits of the district court's conclusion that the Landry Bill is unconstitutional.

> 1. *The district court correctly concluded that Duncan satisfied the* Ex parte Young *exception.*

**a.** Start with their *Ex parte Young* challenge. "Generally, 'sovereign immunity bars private suits [in federal court] against nonconsenting states'" and their officials. *Book People, Inc. v. Wong*, 91 F.4th 318, 334 (5th Cir. 2024). Under *Ex parte Young*, though, "a plaintiff can seek prospective injunctive relief against individual state officials" that "have some connection with the enforcement of the allegedly unconstitutional law." *Id.* More specifically, the officials must have a particular duty to "compel[] or constrain[] persons to obey the challenged law," as well as a "demonstrated willingness to exercise that duty." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (original alterations omitted).

Petitioners contend that the *Ex parte Young* exception cannot apply here because they "do not compel or constrain anyone with respect to [the Landry Bill]'s abolition of the Orleans Parish criminal clerk's office." Pet. 13. But Louisiana law and Petitioners' recent conduct both prove otherwise.

As the district court explained, under Revised Statute § 18:513(A)(5), Secretary of State Landry must certify the name of any elected official to Governor Landry. Governor Landry, in turn, must confirm that the individual "possesses the legal qualifications to hold the office to which he was elected," *Dupuy v. Jones*, 15 So. 2d 528, 529 (La. Ct. App. 1943), and issue the individual a commission, LA. STAT. § 18:513(A)(5). Only then can the individual "take the oath of office prescribed by law." *Id.* § 42:141(A).

If a person "assumes or pretends to be a public officer without the authority of an election, or without the authority of a commission from the governor when a commission is required," he or she is deemed "a usurper," subject to both criminal penalties, LA. STAT. § 42:71, and civil suit, *id.* § 42:76. In fact, Louisiana law expressly requires Attorney General Murrill or the appropriate District Attorney to bring an action in the name of the state against any person who "usurps, intrudes into, or unlawfully holds or exercises or attempts to remain in possession of any public office or franchise within th[e] state," and separately authorizes Governor Landry to do the same. *Id.* [12]

---

[12] Although the district court dismissed without prejudice Duncan's

29

The law further authorizes the Governor to take action against any "public officer who \*\*\* in any manner recognizes the authority of any usurper" and thus "forfeits" his or her office. LA. STAT. §§ 42:72-76. And if a court "declares that any public officer, whose office is established by the constitution, has forfeited his office," Governor Landry "shall fill such office by appointment." *Id.* § 42:75.

In short, when it comes to assumption of public office, Petitioners control both the gate and the enforcement mechanism behind it: No one can legally take office without their authorization, and anyone who tries faces their challenge. That is textbook enforcement via "constraint," *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)—and the Landry Bill's implementation depends on it. Only Petitioners can ensure that Napoleon assumes the Orleans clerk of court office consistent with the Bill's terms—from certifying her appointment and issuing her a commission, to challenging anyone who tries to assume the same responsibilities or otherwise interferes with her position. That is

voting-rights claim against Attorney General Murrill, her statutory enforcement role helps illustrate the broader enforcement framework through which Louisiana laws governing the assumption of public office operate.

precisely the sort of "active" enforcement role *Ex parte Young* requires. *Id.* at 125; *Air Evac EMS, Inc. v. Texas, Dep't of Ins.*, 851 F.3d 507, 519 (5th Cir. 2017) (applying *Ex parte Young* where official "effectively ensure[d] the [challenged] scheme [was] enforced from start to finish").

**b.** Nor is there any reason to question Petitioners' willingness to exercise their enforcement authority. True, they disclaim on appeal any intent to certify or commission Napoleon as the clerk of court. *E.g.* Pet. 5-6. As explained above, though, Napoleon cannot lawfully assume the role of clerk of court until they do. *See supra*, pp.24-25; *see also State ex rel. Marrero v. Fortmeyer*, 13 Teiss. 148, 149 (La. Ct. App. 1915) ("[N]o civil officer is permitted to assume office without a commission issued to him by the Governor of the State, except those specially exempted."). And Petitioners are currently using every tool at their disposal to keep Napoleon in place: They are litigating this very suit to vacate the TRO enjoining her commissioning; they have threatened legal action against the New Orleans City Council for appointing an interim clerk, citing the same statute referenced above, LA. STAT. § 42:76; and they have even gone so far as to ask the Louisiana Supreme Court to exercise its plenary

31

jurisdiction to "unambiguously declare" Napoleon the Orleans clerk of court.  *See supra,* pp.15-16.

Put simply, the notion that Petitioners cannot and will not enforce the Landry Bill is belied by the fact that they are actively doing so—on multiple fronts, in multiple courts, simultaneously.  Their "demonstrated willingness to exercise" their enforcement authority could hardly be more apparent.  *Mi Familia Vota*, 105 F.4th at 325.  The *Ex parte Young* exception thus readily applies.

### 2.   *The district court correctly concluded that Duncan has standing.*

Petitioners' standing challenge fares no better.  They contend Duncan's injury is neither traceable to them nor redressable by any order against them.  Pet. 17-18.  But this argument, too, rests entirely on Petitioners' supposed "lack of enforcement power." *Id.* at 16.  So it, too, fails for the reasons outlined above.

In all events, the relief the TRO provides proves Petitioners' arguments are wrong.  As explained (at 28-31), enjoining Governor Landry and Secretary of State Landry from certifying and commissioning Napoleon as the new clerk of court should ensure the elected office for which Duncan would be entitled to cast a vote (and run) is not filled by a

person who never ran for it, thus preventing the violation of Duncan's constitutional rights. *See* Dist.Ct.ECF 13, at 22. Though narrow, such relief suffices for standing purposes. *See Inclusive Communities Project, Inc. v. Department of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) ("[I]t's enough [for redressability purposes] if the desired relief would lessen" the plaintiff's injury.).

That Duncan can (and will) seek a broader injunction—one allowing him to assume the office to which he was elected, certified, and commissioned—further confirms that he has standing to bring his case. *See supra*, pp.25-26. The limited nature of the TRO simply shows the care and restraint the district court exercised in issuing it.

> 3. *The district court correctly concluded that* Pennhurst *does not apply to Duncan's federal constitutional claims.*

Finally, Petitioners contend the TRO "runs afoul of *Pennhurst*" because it is "premised on Duncan's assertions that [the Landry Bill] disenfranchised Duncan in violation of Louisiana law." Pet. 20. Petitioners misunderstand both the basis of the TRO and *Pennhurst* itself.

Under *Pennhurst*, federal courts cannot "instruct[] state officials on how to conform their conduct to state law." 465 U.S. at 106. But that

does not preclude federal courts from considering a federal constitutional claim that is "predicated" on state law and then enforcing their decision, as happened here. *Young v. Hosemann*, 598 F.3d 184, 189 (5th Cir. 2010) ("That these claims alleging violations of rights conferred by federal law are predicated on an alleged violation of state law is of no moment."); *Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 965 (5th Cir. 1993) ("Under existing law, federal courts must necessarily construe local law and administrative regulations to ascertain if there is a[n] interest protected by the federal constitution.") (alteration in original).

Nor does it matter if the relief ordered would be the same under state law. "Under *Pennhurst*, \*\*\* the determinative question is not the relief ordered, but whether the relief was ordered pursuant to state or federal law." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 453 (5th Cir. 2022) (quoting *Brown v. Georgia Dep't of Revenue*, 881 F.2d 1018, 1023 (11th Cir. 1989)). Nothing in *Valentine v. Collier* suggests otherwise. 956 F.3d 797, 802 (5th Cir. 2020) (concluding *Pennhurst* barred injunction that court said "would 'promote compliance' with [state] policies").

Here, there is no doubt that the district court's TRO was issued pursuant to federal law—specifically, the First and Fourteenth Amendments. *See* Dist.Ct.ECF 13, at 32-44. To be sure, that analysis required the district court to "ascertain" Louisiana law. *Everett v. Schramm*, 772 F.2d 1114, 1119 (3d Cir. 1985). And perhaps the relief ordered would be similar under Louisiana law. But when "federal law incorporates by reference requirements established by state law, the federal supremacy rationale underlying *Ex parte Young* applies with equal force." *Id.* Indeed, "[t]o hold otherwise would seriously undermine the national government's role in programs based on cooperative federalism. To put the matter more bluntly, where a state violates federal law, it is no better off because it also violates its own law." *Id.* (internal quotation marks and citations omitted).

## II. NO STAY IS WARRANTED PENDING RESOLUTION OF THE MANDAMUS PETITION

Because Petitioners have not come close to satisfying the stringent requirements for mandamus, this Court should deny their Petition forthwith and deny their Motion for Full Stay Pending Appeal as moot. But even if the Court determines that the mandamus petition warrants further consideration, a stay is unwarranted for largely the same

35

reasons. Petitioners are unlikely to succeed on the merits of their mandamus request; they have not identified any concrete, irreparable harm they will suffer if the TRO is allowed to take effect while the Court considers their arguments; and the balance of equities and the public interest favor preserving the status quo and preventing implementation of a law the district court found unconstitutional—especially given that preliminary injunction proceedings will soon be underway.

## CONCLUSION

For the foregoing reasons, this Court should lift the administrative stay and deny both the Petition for Writ of Mandamus and the Motion for Full Stay Pending Appeal.

Respectfully submitted,

Dated: May 12, 2026

/s/ *Margaret O. Rusconi*

William P. Quigley
Professor Emeritus of Law
LOYOLA UNIVERSITY COLLEGE OF
  LAW
7214 St. Charles Avenue
New Orleans, LA 70118
(504) 710-3074
quigley77@gmail.com

Adina Marx-Arpadi
Kayla Vinson
CENTER FOR CONSTITUTIONAL
  RIGHTS
666 Broadway, 7 Fl.
New York, NY 10012
(212) 614-6464
amarxarpadi@ccrjustice.org
kvinson@ccrjustice.org

Ronald L. Wilson
Attorney at Law
701 Poydras Street, Suite 4100
New Orleans, LA 70139
(504) 525-4361
cabral2@aol.com

Margaret O. Rusconi
Pratik A. Shah
AKIN GUMP STRAUSS HAUER
  & FELD LLP
2001 K Street NW
Washington, DC 20006
(202) 887-4000
mrusconi@akingump.com
pshah@akingump.com

Nora Ahmed
Malcolm Lloyd
Charles Andrew Perry
Ashley Fox
ACLU FOUNDATION OF LOUISIANA
1340 Poydras St., Ste. 2160
New Orleans, LA 70112
(504) 522-0628
nahmed@laaclu.org
mlloyd@laaclu.org
aperry@laaclu.org
afox@laaclu.org

*Counsel for Respondent Calvin Duncan*

# CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2026, I electronically filed the foregoing with the Clerk of the Court of the U.S. Court of Appeals for the Fifth Circuit using the appellate CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Margaret O. Rusconi*
Margaret O. Rusconi

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because it contains 6,974 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Century Schoolbook font.

*/s/ Margaret O. Rusconi*
Margaret O. Rusconi

May 12, 2026

# ATTACHMENT A

# In the
# Supreme Court of Louisiana

GARY CROCKETT,
*Respondent/Plaintiff,*

v.

STATE OF LOUISIANA ET AL.,
*Applicants/Defendants.*

On Application for Supervisory Writs from
the Nineteenth Judicial District Court, No. 777840
Judge Louise Hines, presiding

## EMERGENCY APPLICATION FOR SUPERVISORY WRITS OF THE STATE OF LOUISIANA AND ITS OFFICIALS FOR EXPEDITED CONSIDERATION

ELIZABETH B. MURRILL
  Attorney General of Louisiana

LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70802
(225) 421-4088
FairclothZ@ag.louisiana.gov

ZACHARY FAIRCLOTH (LA. 39875)
  Principal Deputy Solicitor General

ELIZABETH L. BROWN (LA. 42025)
  Assistant Solicitor General

May 8, 2026

# SUPREME COURT OF LOUISIANA
## CIVIL
## PRIORITY FILING SHEET

CASE TITLE: Crockett v. State of Louisiana

APPLICANT PARTY NAME(S): State of Louisiana, Governor Jeff Landry, Atttorney General Liz Murrill, Secretary of State Nancy Landry, Senate President Cameron Henry, and House Speaker Phillip Devillier

Application made by: □ Plaintiff ■ Defendant □ Other

What is the nature of the priority? Request for stay and priority consideration

How and when will applicant be adversely affected if relief is not granted? Monday, May 11 at noon when the Orleans City Council will attempt to declare a special election for the Orleans clerk of court

Is a hearing date set? □ YES ■ NO. If yes, hearing date: _____

Is a trial date set? □ YES ■ NO. If yes, trial date: _____

Is trial in progress? □ YES ■ NO

Are there any out of state witnesses? □ YES ■ NO

Is this a jury trial? □ YES ■ NO

Is there a stay now in effect? □ YES ■ NO. If yes, until when: _____

## LOWER COURT INFORMATION

Ruling of district court: Grant of preliminary injunction and denial of exceptions Date of ruling: 5/8/2026

## APPELLATE COURT INFORMATION

Was an application made to the court of appeal? □ YES ■ NO. If so, which Circuit? _____

Was this pleading simultaneously filed? □ YES ■ NO

Application made by: □ PLAINTIFF □ DEFENDANT □ OTHER

Filing date: _____ Date of court of appeal action: _____

Court of appeal action: _____

If you did not file with this Court within ten days of the court of appeal's disposition, set forth the grounds for good cause, supported by appropriate documentation if necessary (See La. S.Ct. Rule X, § 5(a)): _____

_____

If an application was not made to the court of appeal, state why: _____

## LEAD COUNSEL AND LOWER COURT JUDGE INFORMATION

**APPLICANT:**

Lead Counsel Name: Zachary Faircloth  Bar Roll No. 39875

Email address: FairclothZ@ag.louisiana.gov  Cell No.: (225) 421-4088

**RESPONDENT:**

Lead Counsel Name: Gary Crockett (pro se)  Bar Roll No. _____

Email address: garycrockett21@gmail.com  Cell No.: (504) 422-6100

**LOWER COURT:**

Lower Court Judge Name: Judge Louise Hines

Email address: lewilkinson@19thjdc.org  Cell No.: (225) 389-4706

Lower Court Judge's Law Clerk Name: Morgan Broussard

Email address: MBroussard@19thJDC.org  Cell No.: _____

## CERTIFICATION

I am requesting ■ **PRIORITY** consideration of this application or ■ a **STAY** pending consideration of this application. Pursuant to Louisiana Supreme Court Rule 10, § 2(e), **I have notified all counsel and unrepresented parties by telephone or other equally prompt means of communication that said writ application has been or is about to be filed in this Court** and that I have served on all parties, BY MEANS EQUAL TO THE MEANS USED TO EFFECT FILING IN THIS COURT.

■ I shall **IMMEDIATELY** notify the Court if the need for expedited consideration changes due to settlement, continuance or any other circumstances. Failure to notify the Court **SHALL SUBJECT ME TO PUNISHMENT FOR CONTEMPT OF THE AUTHORITY OF THE COURT.**

Date: 5/8/2026  Signature: /s/ Zachary Faircloth  (Rev. 12/2022)

# SUPREME COURT OF LOUISIANA
# CIVIL
## WRIT APPLICATION FILING SHEET

### TO BE COMPLETED BY COUNSEL OR PRO SE LITIGANT FILING APPLICATION

CASE TITLE: Crockett v. State of Louisiana

APPLICANT PARTY NAME(S): State of Louisiana, Governor Jeff Landry, Atttorney General Liz Murrill, Secretary of State Nancy Landry, Senate President Cameron Henry, and House Speaker Phillip Devillier

Have there been any other filings in this Court in this matter: □ YES ■ NO

Are you seeking a Stay Order? ■ YES □ NO. If so, you MUST complete a civil priority form.

Are you seeking Priority Treatment? ■ YES □ NO. If so, you MUST complete a civil priority form.

Does this pleading contain confidential information? □ YES ■ NO. If so, please file a motion to seal.

Does any pleading contain a constitutional challenge to any Louisiana codal or statutory provision? ■ YES □ NO

If yes, which pleading? Petition (Appx.5-9)

If yes, has the Office of the Louisiana Attorney General been notified pursuant to La. R.S. 13:4448? □ YES □ NO

## LEAD COUNSEL / PRO SE LITIGANT INFORMATION

**APPLICANT:**

Lead Counsel Name: Zachary Faircloth    Bar Roll No. 39875

Email address: FairclothZ@ag.louisiana.gov    Cell No.: (225) 421-4088

**RESPONDENT:**

Lead Counsel Name: Gary Crockett (pro se)    Bar Roll No.

Email address: garycrockett21@gmail.com    Cell No.: (504) 422-6100

Is the pleading being filed: ■ In proper person. □ In forma pauperis

Are there any pro se litigants involved in this matter: ■ YES □ NO

## TYPE OF PLEADING

□ Tort □ Contract □ Property □ Probate □ Family □ Juvenile □ Workers' Comp. □ Revenue (tax) ■ Civil Other

□ Administrative Agency □ Bar Admission □ Lawyer Discipline □ Judicial Discipline □ Licensing / Discipline Other

## LOWER COURT INFORMATION

Parish and Judicial District Court: East Baton Rouge, 19th Judicial District Court    Docket No: 2026-777840

Judge and Section: Judge Louise Hines, Div. F, Sec. 34    Date of Ruling: 5/8/2026

## APPELLATE COURT INFORMATION

Circuit:_____ Docket No.:_____ Applicant:_____ Filing date:_____

Was this pleading simultaneously filed? □ YES □ NO.

Ruling date:_____ Action:_____

Panel of Judges:_____ En Banc: □

## REHEARING INFORMATION

Applicant:_____ Filing date:_____ Ruling date:_____

Action:_____ Panel of Judges:_____ En Banc: □

## PRESENT STATUS

■ pre-trial

□ hearing; scheduled date:_____

□ trial; scheduled date:_____

□ trial in progress

Is there a stay now in effect: □ YES ■ NO

## VERIFICATION

I certify that the above information and all of the information contained in this application is true and correct to the best of my knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule X, are attached to this filing. I further certify that a copy of this application has been mailed or delivered to the appropriate court of appeal, to the lower court judge, and to all other counsel and unrepresented parties.

Date: 5/8/2026    Signature: /s/ Zachary Faircloth    (Rev. 12/2022)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

APPENDIX OF EXHIBITS ...................................................................................... v

INTRODUCTION ...................................................................................................... 1

REQUEST FOR PRIORITY CONSIDERATION AND AND
FOR THE COURT TO ASSUME PLENARY JURISDICTION .................................. 2

COUNSEL LIST ....................................................................................................... 3

STATEMENT OF THE CASE .................................................................................. 4

ASSIGNMENTS OF ERROR ................................................................................... 7

SUMMARY OF THE ARGUMENT .......................................................................... 8

ARGUMENT ............................................................................................................ 8

I.    THE COURT SHOULD GRANT WRITS. .......................................................... 8

II.   THE COURT SHOULD PUT AN END TO THIS CASE—AND THE
      CASES LIKE IT. .......................................................................................... 10

      A.  The Legislature Has the Plenary Power to Abolish
          the Orleans Criminal Clerk of Court Office. ..................................... 10

      B.  Act 15 Did Not Create a New Vacancy That
          Requires an Election. ...................................................................... 13

III.  AT MINIMUM, THE COURT SHOULD REVERSE THE UNLAWFUL MANDATORY
      PRELIMINARY INJUNCTION ISSUED AFTER SUMMARY PROCEEDING. ......... 14

CONCLUSION ....................................................................................................... 15

CERTIFICATE OF SERVICE ................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Badeaux v. Sw. Computer Bureau, Inc.,*
2005-0612 (La. 3/17/06), 929 So. 2d 1211 ............................................................. 11

*Calhoun v. Landry,*
2025-00316 (La. 3/18/25), 403 So. 3d 521,
*reh'g denied*, 2025-00316 (La. 3/22/25), 403 So. 3d 599 ............................... 2, 6, 14

*Deshotels v. White,*
2016-0889 (La. App. 1 Cir. 8/16/17), 226 So. 3d 1211,
*writ denied*, 2017-1565 (La. 12/5/17), 231 So. 3d 628 .......................................... 15

*Duncan v. Landry,*
3:26-CV-460 (M.D. La. Apr. 29, 2026) ..................................................................... 5

*E.T. v. Paxton,*
19 F.4th 760 (5th Cir. 2021) ................................................................................... 12

*Fisk v. Police Jury of Jefferson,*
116 U.S. 131 (1885) ................................................................................................ 12

*Fremin v. Boyd Racing, LLC,*
2024-995 (La. 3/21/25), 403 So. 3d 546 .................................................................. 12

*State ex rel. Garland v. Guillory,*
184 La. 329, 166 So. 94 (1935) ......................................................................... 12, 13

*Gen. Motors Acceptance Corp. v. Daniels,*
377 So. 2d 346 (La. 1979) ...................................................................................... 15

*Giauque v. Clean Harbors Plaquemine, L.L.C.,*
2005-0799 (La. App. 1 Cir. 6/9/06), 938 So. 2d 135,
*writ denied*, 2006-1720 (La. 1/12/07), 948 So. 2d 150 ............................................ 6

*Harrington v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.,*
2021-1527 (La. App. 1 Cir. 9/29/22), 2022 WL 4587873,
*writ denied*, 2022-1621 (La. 1/11/23), 352 So. 3d 985 .......................................... 14

*Hoag v. State ex rel. Kennedy,*
2001-1076 (La. App. 1 Cir. 11/20/02), 836 So. 2d 207,
*writ denied*, 2002-3199 (La. 3/28/03), 840 So. 2d 570 .......................................... 12

*Hyman v. Puckett,*
2015-0930 (La. App. 4 Cir. 5/4/16), 193 So. 3d 1184 ............................................ 15

*La. Fed'n of Teachers v. State,*
2013-120 (La. 5/7/13), 118 So. 3d 1033 ................................................................. 10

*In re Landry,*
No. 26-30249 (5th Cir. May 3, 2026)........................................................................ 5

*Levy v. Bd. of Supervisors of La. State Univ. & A&M Coll.,*
2025-0168 (La. App. 1 Cir. 2/20/25), *writ denied*,
2025-00280 (La. 5/20/25), 409 So. 3d 223 ............................................................. 14

*Mellor v. Par. of Jefferson,*
  2022-01713, p. 3 (La. 9/1/23), 370 So. 3d 388 .......................................................... 9

*Scheffler v. Adams & Reese, LLP,*
  2006-1774 (La. 2/22/07), 950 So. 2d 641 ................................................................ 11

*Scott v. La. State Police,*
  2024-01591 (La. 1/9/25), 398 So. 3d 634 .................................................................. 9

*State v. Francois,*
  445 So. 2d 416 (La. 1983) ....................................................................................*passim*

*Unwired Telecom Corp. v. Par. of Calcasieu,*
  2003-0732, p. 8 (La. 1/19/05), 903 So. 2d 392 .......................................................... 9

*Wederstrandt v. Kol,*
  2022-1570 (La. 6/27/23), 366 So. 3d 47 .................................................................. 12

*Westlawn Cemeteries, L.L.C. v. La. Cemetery Bd.,*
  2021-1414, p. 3 (La. 3/25/22), 339 So. 3d 548 .......................................................... 9

**Statutes**

La. C.C.P. art. 851 ...................................................................................................... 14

La. C.C.P. art. 855.1 .............................................................................................*passim*

La. R.S. 13:761(C) ........................................................................................................ 4

La. R.S. 13:5581(A)–(B) ............................................................................................ 11

La. R.S. 15:1228.3 ...................................................................................................... 13

La. R.S. 42:76 .............................................................................................................. 7

**Other Authorities**

La. Const. art. V, § 5(a)......................................................................................... 2, 9

La. Const. art. V, § 32.........................................................................................*passim*

La. Const. art. VI, § 13 .............................................................................................. 6

La. Legislative Auditor,
  *Clerks of Court*, t.ly/6wv3r ..................................................................................... 4

La. Sup. Ct. R. 10 § 5(b)............................................................................................. 9

Matt Bruce,
  *Debate intensifies as bills to consolidate New Orleans'*
  *courts prep for House, Senate floors,*
  NOLA.com (Apr. 7, 2026), t.ly/SW4Uo ................................................................. 4

Senate Bill 141 of the 2026 Regular Session,
  La. State Legislature,
  https://perma.cc/V5RH-HR28 ............................................................................... 13

# APPENDIX OF EXHIBITS

A – Judgement and Reasons, dated May 8, 2026 .............................................. 001-004

B – Petition for Declaratory and Injunctive Relief ............................................ 005-009

C – Letter from Orleans Parish District Attorney to New Orleans
    Council City, dated May 7, 2026 ............................................................. 010-011

D – Letter from Mayor Heena Moreno to New Orleans City Council ..................... 012

E – Letter from Liz Murrill to New Orleans City Council ................................ 013-015

## INTRODUCTION

On Monday at noon, the New Orleans City Council will vote to declare a vacancy in the Orleans Parish clerk-of-court office, install an interim clerk to replace the sitting clerk, and order a special election the Legislature did not authorize. The Council's only arguable authority is this Nineteenth Judicial District Court injunction issued today, crediting a pro se plaintiff's constitutional theory foreclosed by this Court 40 years ago, failing to even consider the preliminary-injunction factors, and then banning the State from permitting "further physical consolidation of the Orleans Parish Clerk's offices into one." Appx.3. This has to stop: There is neither a criminal clerk of court nor a vacancy. The Legislature's Act 15 of 2026 abolished the office of Orleans criminal-district-court clerk at the end of May 3, transferred its duties to the Orleans civil-district-court clerk, and renamed that continuing office the clerk of court for Orleans Parish—an office Chelsey Richard Napoleon currently holds and lawfully exercises.

This Court's immediate intervention is necessary. Without it, a deeply flawed preliminary injunction will become the predicate for competing claims to a public office, an unauthorized special election, and needless confusion in the Orleans Parish courts (all while the May 16 election is ongoing). All that against the backdrop of an injunction that cannot survive even a cursory review. Plaintiff has no cause of action because Article V, § 32 gives the Legislature plenary authority to change the Orleans Parish clerk offices "by law." His constitutional challenge could not be resolved by summary proceeding because Louisiana Code of Civil Procedure article 855.1 requires an *ordinary* proceeding. And the preliminary injunction is unlawfully mandatory because Act 15 has already taken effect, so preventing "further" consolidation necessarily requires unwinding the statute, restoring an abolished office, and divesting the lawful clerk of records and property before any merits trial.

This Court should exercise its plenary supervisory jurisdiction, vacate the injunction, and dismiss the petition with prejudice—and unambiguously declare that Chelsey Napoleon is the clerk of court for Orleans Parish.

1

## REQUEST FOR PRIORITY CONSIDERATION AND
## FOR THE COURT TO ASSUME PLENARY JURISDICTION

At end of day Sunday, the Louisiana Legislature, by Act 15, abolished the office of Orleans Parish criminal-district-court clerk, transferred its duties, records, and property to the Orleans Parish civil-district-court clerk, and renamed that office the clerk of court for the parish of Orleans. Yet today, over the State's exceptions, the Nineteenth Judicial District Court enjoined executive and legislative officials to prohibit "further physical consolidation of the Orleans Parish Clerk's offices into one," Appx.3, until a pro se litigant is able to litigate his claim to trial—a claim flatly foreclosed by this Court in *State v. Francois*, 445 So. 2d 416, 418 (La. 1983).

"Time is of the essence." *Calhoun v. Landry*, 2025-00316 (La. 3/18/25), 403 So. 3d 521, 522, *reh'g denied*, 2025-00316 (La. 3/22/25), 403 So. 3d 599. Emboldened by the judgment below, the New Orleans City Council will convene Monday, May 11, at noon to install a purported "interim clerk" in place of the lawful officeholder, Chelsey Richard Napoleon, and to order a special election the Legislature has not authorized. *See* Agenda, Special Meeting of the City Council, City of New Orleans (May 11, 2026, 12:00 PM), t.ly/WSCLn. This case is, therefore, the paradigm for expedited plenary review: There is "no evidence to adduce," "the questions are all purely legal"; and there is "no reason to delay resolution of this important matter." *Id.* Both "the interests of judicial economy" and "the need to provide a definitive resolution of the issue [] to prevent confusion" cut in favor of expedited intervention. *Id.* (citing La. Const. art. V, § 5(a)).

Defendants therefore respectfully request this Court's intervention before Monday, May 11, 2026, at 12:00 p.m. by way of a stay or ruling on the application itself. *See* La. Unif. R. Ct. of App. 4-4(B). The Court should exercise its plenary supervisory jurisdiction and put an end to this case by unambiguously declaring that Chelsey Napoleon is the clerk of court for Orleans Parish.

## COUNSEL LIST

| Plaintiff/Respondent | Counsel |
| --- | --- |
| Gary Crockett | Gary Crockett (pro se)<br>462 Lakeshore Parkway<br>New Orleans, LA 70124<br>Telephone: (504) 422-6100<br>Email: garycrockett21@gmail.com |

| Defendants/Applicants | Counsel |
| --- | --- |
| The State of Louisiana<br><br>Governor Jeff Landry<br><br>Attorney General Liz Murrill<br><br>Secretary of State Nancy Landry<br><br>Senate President Cameron Henry<br><br>House Speaker Phillip Devillier | Zachary Faircloth (La 39875)<br>Elizabeth L. Brown (La. 42025)<br>Louisiana Department of Justice<br>1885 North 3rd Street<br>Baton Rouge, Louisiana 70802<br>Telephone: (225) 421-4088<br>Email: FairclothZ@ag.louisiana.gov<br>Email: BrownE@ag.louisiana.gov |

| Defendant Below | Counsel |
| --- | --- |
| Orleans Parish Clerk of Court Chelsey Richard Napoleon | Geri Broussard<br>Broussard Baloney Law Firm<br>3852 Napoleon Ave.<br>New Orleans, LA 70125<br>Telephone: (504) 332-0574 |

**A.** On April 30, 2026, the Governor signed into law Act 15. *See* Act 15 of the 2026 Regular Session, La. State Legislature, t.ly/rV82O. As of "the end of May 3, 2026," it "abolish[ed]" the office of the Orleans Parish criminal-district-court clerk, transferred its responsibilities, records, and property to the Orleans Parish civil-district-court clerk, and renamed that office "the clerk of court for the parish of Orleans." Act 15 § 4. To that end, the Act also amends statutes across Titles 13, 15, and 18 to eliminate references to a separate "civil" or "criminal" Orleans clerk.[1]

Act 15 reflects a broader court-reform effort by the Legislature. *See* Matt Bruce, *Debate intensifies as bills to consolidate New Orleans' courts prep for House, Senate floors*, NOLA.com (Apr. 7, 2026), t.ly/SW4Uo. Orleans Parish's bifurcated court structure is the only one of its kind in the State. *See* La. Legislative Auditor, *Clerks of Court*, t.ly/6wv3r. That unusual structure is a vestige of an earlier era when New Orleans was the State's dominant population center; today, Orleans is no longer even Louisiana's largest parish. *See* Informed Sources April 10th, 2026, WYES New Orleans, t.ly/1z40P, at 19:35–24:00.

Act 15 (and several other reform bills this session) continue a long legislative pattern of streamlining Orleans Parish's unusually fragmented court system. *See, e.g.*, SB645 of the 2006 Regular Session by Senator Willie Landry Mount, La. State Legislature, t.ly/44M8b (consolidating Orleans civil and criminal sheriffs); HB607 of the 2013 Regular Session by Representative Helena Moreno, La. State Legislature, t.ly/IU7DI (providing for the elimination of two Orleans juvenile court judgeships); HB600 of the 2016 Regular Session by Representative Walt Leger, III, La. State Legislature, t.ly/lznrE (combining Orleans traffic and municipal courts and

---

[1] *See* La. R.S. 13:761(C) (Supplemental compensation fund); 13:1211 (Qualifications); 13:1211.1 (Election); 13:1212.1 (Expenses); 13:1213.1 (Court costs); 13:1216 (Dockets); 13:1222 (Vehicles); 13:1338 (Transfers); 13:1373, 1373.1 (Minute clerks); 13:1381 (Fees); 13:1381.3 (Expense fund); 13:1381.7 (City appropriations); 13:2515 (Writ applications); 15:85.1 (Bonds); 18:2(3) ("Clerk of court" defined); 18:444 (Parish executive committees); 18:602, 1300.7 (Vacancies); 18:1354 (Custodian of voting machines); 18:1511.2 (Supervisory committee).

eliminating a judgeship).

**B.** Last Wednesday, Calvin Duncan, who had been elected to the criminal clerk-of-court's office before its abolition, sued the Governor, Attorney General, and Secretary of State in the Middle District of Louisiana. *Duncan v. Landry*, 3:26-CV-460 (M.D. La. Apr. 29, 2026). Duncan sought a TRO forcing the State to let him "assume[] the Office of Orleans Parish Criminal District Court Clerk at 12:00 a.m. on May 4, 2026." Emergency Mot. for Temporary Restraining Order, *Duncan*, No. 3:26-CV-460 (M.D. La. Apr. 29, 2026), ECF 2.

The district court denied that relief but separately enjoined the Governor and Secretary of State from "enforcing" Act 15 and from "certifying" and "issuing … a commission" to Ms. Napoleon. Order, *Duncan*, No. 3:26-CV-460 (M.D. La. May 3, 2026), ECF 13. The State immediately requested a stay and writ of mandamus from the U.S. Fifth Circuit. *In re Landry*, No. 26-30249 (5th Cir. May 3, 2026), ECF 2-1. Approximately thirteen hours after the district court's order, the Fifth Circuit administratively stayed it. *In re Landry*, No. 26-30249 (5th Cir. May 4, 2026), ECF 14-1. Act 15 has been in effect ever since: The criminal clerk's office no longer exists and its functions, property, and records are absorbed by the civil clerk—now called the clerk of court for the parish of Orleans.

**C.** That was so until today. In the Nineteenth Judicial District Court, pro se plaintiff Gary Crockett sought a preliminary injunction alleging that the Orleans Parish criminal clerk's office is "constitutionally protected" and may be abolished only by constitutional amendment. Appx.5–9. That theory rests on a misreading of Article V, § 32, which expressly authorizes the Legislature to change Orleans Parish's clerk of court offices "by law"—and which this Court construed in just that way more than forty years ago in *State v. Francois*, 445 So. 2d 416, 418 (La. 1983).

The State Defendants—the State, the Governor, the Attorney General, the Secretary of State, the Senate President, and the House Speaker—therefore filed peremptory exceptions of no cause of action and dilatory exceptions for unauthorized use of summary proceedings. Ms. Napoleon filed her own peremptory exceptions. At

5

today's preliminary-injunction hearing, however, the district court overruled the State's no-cause exception, granted the summary-proceedings exception only in part, and issued a preliminary injunction against the State Defendants "**PROHIBITING** any further physical consolidation of the Orleans Parish Clerk's offices into one pending future proceedings." Appx.1–3. And the court secured that injunction with a $1,000 bond. Appx.3.

The court's written reasons for that extraordinary intrusion demand this Court's immediate attention. To begin, beyond granting the injunction, the order does not address the merits of the preliminary injunction request at all. It does not mention, much less analyze, the likelihood of success, irreparable harm, or any other factor required for that "harsh, drastic, and extraordinary remedy." *Giauque v. Clean Harbors Plaquemine, L.L.C.*, 2005-0799 (La. App. 1 Cir. 6/9/06), 938 So. 2d 135, 140, *writ denied*, 2006-1720 (La. 1/12/07), 948 So. 2d 150. The order merely recites that "any further physical consolidation of the Orleans Parish Clerk's offices into one" is enjoined. Appx.3.

Nor do the court's reasons on the exceptions cohere. The State invoked this Court's binding decision in *Francois*, 445 So. 2d at 418—which forecloses Crockett's theory directly—and the district court dismissed that authority as "go[ing] not to the existence of a cause of action, but to the ultimate merits of the Plaintiff's constitutional claims." Appx.2. And the court allowed Crockett's constitutional claim to proceed summarily because, it said, "temporary restraining and preliminary injunctive relief" are "cognizable by summary proceeding," Appx.2, notwithstanding Article 855.1's express prohibition to the contrary, *see Calhoun*, 403 So. 3d at 529 (Cole, J., concurring).

**D.** The trial court's order is going to destabilize the May 16 election and the Orleans courts. The day before the court issued its order, the Orleans District Attorney wrote to the New Orleans City Council urging it to declare the Orleans clerk of court's office vacant and to appoint an interim clerk pending a special election. Appx.10–11. The District Attorney's theory rested on Article VI, § 13, which governs

vacancies in elected local offices—and which by its own terms applies "except as otherwise provided by this constitution." The District Attorney's letter thus did not address Article V, § 32, the provision that does otherwise provide for Orleans Parish clerks. *Cf. Francois*, 445 So. 2d at 418.

The trial court's order issued the next morning. Within hours, the Mayor of New Orleans adopted the District Attorney's theory and endorsed Council action. Appx.12. The Mayor's letter described Act 15 as creating "the new position of Orleans clerk of court" and asserted that "a newly created office is vacant by default." Appx.12. At her request, the Council noticed a special meeting for Monday, May 11, at noon to act on the District Attorney and Mayor's recommendation: declare a vacancy, appoint an interim clerk, and order a special election the Legislature did not authorize. *See* Agenda, Special Meeting of the City Council, City of New Orleans (May 11, 2026, 12:00 PM), t.ly/WSCLn.

Attorney General Murrill responded immediately. Her letter to the Council identifies Article V, § 32 as the controlling provision, explains why no vacancy exists, and notifies the Council that any attempt to install an interim clerk would be *ultra vires* and would trigger her duties under La. R.S. 42:76. *See* Appx.13–15. The letter further notifies the Council that the State would seek this Court's supervisory intervention before Monday's meeting. *See* Appx.15.

This application is that intervention. The Court should grant writs and dismiss the petition with prejudice—and declare that Ms. Napoleon is lawfully the clerk of court for Orleans Parish under Act 15.

## ASSIGNMENTS OF ERROR

(1)    The district court erred by overruling Defendants' exception of no cause of action because Article V, § 32 gives the Legislature plenary authority to change by law the Orleans Parish clerk-of-court offices, including by abolishing the criminal clerk-of-court office and assigning its duties to an existing clerk-of-court office.

(2)    The district court erred by adjudicating Plaintiff's constitutional challenge through summary proceeding, despite La. C.C.P. art. 855.1's ordinary-

7

proceeding requirement and issuing a mandatory preliminary injunction that unwinds Act 15 without a full trial on the merits and without requiring Plaintiff to show likely success or irreparable harm.

## SUMMARY OF THE ARGUMENT

The district court's injunction cannot stand for three independent reasons.

**A.** Plaintiff has no cognizable cause of action. Article V, § 32 gives the Legislature plenary authority to "change by law" the Orleans Parish court structure and related offices. This Court has already held that the Legislature may "completely abolish, partially erase or otherwise change" that arrangement by law. Act 15 did exactly that. It abolished the Orleans Parish criminal clerk-of-court office, transferred its powers and property to the civil clerk, and renamed that continuing office the clerk of court for Orleans Parish. No constitutional amendment, vacancy, or special election was required.

**B.1.** Plaintiff's constitutional challenge, moreover, could not be adjudicated through summary proceeding. Louisiana Code of Civil Procedure article 855.1 requires constitutional challenges to legislative acts to be brought by ordinary proceeding. The district court therefore erred by using a preliminary-injunction hearing to suspend a duly enacted statute.

**B.2.** The injunction was independently improper because it is mandatory. Act 15 had already taken effect. So prohibiting its implementation necessarily requires undoing the statute: restoring an abolished office, transferring statutory authority away from the Orleans Parish clerk of court, and installing another official in the former criminal clerk's role. That relief cannot issue as a preliminary injunction, and Plaintiff in any event failed to show likely success on the merits or irreparable harm.

## ARGUMENT

**I.      THE COURT SHOULD GRANT WRITS.**

Three separate efforts are now underway to undermine the rule of law and prevent Act 15 from taking effect—one in the Middle District, one in the Nineteenth Judicial District Court, and one in Orleans local government. Each, whatever its

theory, runs headlong into the Legislature's plenary power under Article V, § 32 to "change by law" the Orleans Parish clerk-of-court office. Yet this is the second time in six days that the State has nonetheless had to seek emergency relief from appellate courts to enforce that settled principle. Absent this Court's intervention now, we fear that the New Orleans City Council's imminent vote will turn one settled constitutional question into a rule-of-law crisis far more difficult to untangle than with a lone writ application.

That makes this a paradigm case for "plenary supervisory jurisdiction." *Mellor v. Par. of Jefferson*, 2022-01713, p. 3 (La. 9/1/23), 370 So. 3d 388, 390–91 (citing La. Const. art. V, § 5 (A)); *see* La. Sup. Ct. R. 10 § 5(b). That jurisdiction is "exercisable at the complete discretion of the court." *Unwired Telecom Corp. v. Par. of Calcasieu*, 2003-0732, p. 8 (La. 1/19/05), 903 So. 2d 392, 400. And the Court has not hesitated in "historically exercis[ing]" its plenary supervisory jurisdiction "when [it] deem[s] it necessary.'" *Mellor*, 370 So. 3d at 390–91 (quoting *Westlawn Cemeteries, L.L.C. v. La. Cemetery Bd.*, 2021-1414, p. 3 (La. 3/25/22), 339 So. 3d 548, 553–54).

The factors that guide that discretion—"the interests of judicial economy, the need to provide a definitive resolution of [an] issue[,] and the possibility of constitutional infringement," *Scott v. La. State Police*, 2024-01591 (La. 1/9/25), 398 So. 3d 634—point in one direction here. And a state district court enjoining enforcement of a duly enacted Act of the Legislature without reason is the textbook case for "constitutional overreach." *See Mellor*, 370 So. 3d at 390–91 (plenary review necessary when a trial court "overstep[s] its authority" (citation omitted)). In such cases, "further delay" only perpetuates and magnifies the effects of that injustice. *Id.*

With due respect to the trial court, its order is exactly that kind of order. It defies binding precedent, ignores the procedural rules governing the relief sought, and skips the merits analysis entirely. *See* Appx.1–3. Without this Court's prompt exercise of its plenary supervisory jurisdiction to dispose of this case and declare that Ms. Napoleon is the lawful Orleans clerk of court under Act 15, the New Orleans City Council's actions evidence that larger scale confusion is on the near horizon.

9

## II. THE COURT SHOULD PUT AN END TO THIS CASE—AND THE CASES LIKE IT.

### A. The Legislature Has the Plenary Power to Abolish the Orleans Criminal Clerk of Court Office.

The Louisiana Constitution gives the Legislature "plenary lawmaking power" to "completely abolish, partially erase or otherwise change the separation between [the criminal and civil district] courts by law." *State v. Francois*, 445 So. 2d 416, 418 (La. 1983) (citing La. Const. art. V, § 32). Thus, contrary to Plaintiff's sole claim below, the Legislature may "completely abolish" the criminal clerk-of-court position. Under *Francois*, Plaintiff was just wrong that Act 15 "removes a constitutionally protected office without following required constitutional procedures." Appx.7. Nor does the district court say otherwise, other than attempting (incorrectly) to credit the assertion as a factual allegation. Appx.2. The district court therefore plainly erred by denying the State's peremptory exception for no cause of action.

While Crockett's petition never explains the basis for his belief that the criminal clerk-of-court office is "constitutionally protected," it appears he is relying on Article V, § 32. *Cf. La. Fed'n of Teachers v. State*, 2013-120 (La. 5/7/13), 118 So. 3d 1033, 1048 (plaintiff "must point to a particular provision of the constitution that would prohibit the enactment of the legislative instrument"). That provision, however, forecloses his claim because it specifically provides that offices like "the clerks of the civil and criminal district courts" are "subject to change by law." La. Const. art. V, § 32. Thus, the Constitution vests the Legislature with the ability to abolish the criminal court clerk, as it did in Act 15.

That's what this Court recognized decades ago. While § 32 "continue[d] the former constitution's separation between the civil and criminal district courts in Orleans Parish," it "reserves to the legislature the plenary lawmaking power to change this division by law." *Francois*, 445 So. 2d at 418 (citing La. Const. art. V, § 32). "Accordingly, the legislature may completely abolish, partially erase or otherwise change the separation between these courts by law." *Id.* That is what Act 15 does: It abolishes the distinction between the civil and criminal court clerks and

10

combines the offices into one, with the civil court clerk taking all responsibilities and property formerly belonging to the criminal clerk-of-court and then eliminates the unnecessary criminal clerk-of-court office. Since the legislature had "plenary lawmaking power" to do so, no constitutional amendment was necessary. *Id.*

The Legislature has previously exercised its plenary power to consolidate formerly separate civil and criminal offices in Orleans Parish referenced in Section 32. *Cf.* La. R.S. 13:5581(A)–(B) (abolishing "the separate offices of the civil sheriff and the criminal sheriff for the parish of Orleans"). Just like the civil and criminal clerks, the civil and criminal sheriffs were specifically mentioned in § 32. La. Const. art. V, § 32 (referring to "the civil and criminal sheriffs"). Yet, that did not prevent the Legislature from changing the arrangement by law, just as it did in Act 15.

In rejecting Defendants' exception, the district court made no mention of *Francois* and did not explain how Crockett could state a valid claim to relief. Appx.2. Instead, it seemed to treat whether he had a cause of action as a generic question of whether an individual can challenge the constitutionality of a legislative act, rather than whether the operative facts underlying Crockett's claim against Defendants. *Cf. Scheffler v. Adams & Reese, LLP*, 2006-1774 (La. 2/22/07), 950 So. 2d 641, 646. Under the district court's view, it appears a defendant can never prevail on a no cause of action exception if a plaintiff challenges a statute's constitutionality simply because "Louisiana courts possess authority to adjudicate constitutional challenges to legislative enactments." Appx.2. That is wrong.

The whole point of a no cause of action exception is "to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition." *Scheffler*, 950 So. 2d at 646. And here, it is "beyond doubt that [Plaintiff] can prove no set of facts in support of any claim which would entitle him to relief," *Badeaux v. Sw. Computer Bureau, Inc.*, 2005-0612 (La. 3/17/06), 929 So. 2d 1211, 1217, because regardless of whether his factual allegations are true or not, no constitutional amendment was necessary to abolish that office, *Francois*, 445 So. 2d at 418; La. Const. art. V., § 32. It was the district court's obligation to interpret the

11

law to conclude whether the office was protected, not simply take Plaintiff's legal assertion as true. *Wederstrandt v. Kol*, 2022-1570 (La. 6/27/23), 366 So. 3d 47, 51.

While Plaintiff's only factual and legal claim rested on this false premise that a constitutional amendment was needed to eliminate the criminal clerk-of-court office, Appx.7–8, the district court also seemed concerned about electoral interests. But as a statute promulgated by duly elected state representative and senators, Act 15 represents the decision of the people of Louisiana through their Legislature. *Fremin v. Boyd Racing, LLC*, 2024-995 (La. 3/21/25), 403 So. 3d 546, 551 ("The legislature's power derives from the citizens who freely elect their legislative representatives…."). As a result, the public interest is irreparably harmed by this effort of one individual to thwart the will of the State's electorate. *See E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021).

In any event, there is no protected interest in maintaining a separate criminal clerk-of-court. Simply because someone is elected to an office does not "prevent the legislature or other proper authority from abolishing the office, or diminishing its duration, or removing him from office." *Fisk v. Police Jury of Jefferson*, 116 U.S. 131, 133 (1885); *accord Hoag v. State ex rel. Kennedy*, 2001-1076 (La. App. 1 Cir. 11/20/02), 836 So. 2d 207, 220, *writ denied*, 2002-3199 (La. 3/28/03), 840 So. 2d 570. Any time the Legislature chooses to eliminate an existing elected office, it will necessarily mean that some elected official will lose the ability to continue holding that office, whether it is eliminated during his tenure or before it starts. And since nothing in Article V, § 32 creates a "prohibition as to the time the rearrangement" or abolition of the bifurcated clerks office "might be made" as to future officeholders, "the Legislature was clearly acting within the authority granted by the Constitution" in enacting Act 15 even though it prevented a clerk-elect from assuming a future office. *See State ex rel. Garland v. Guillory*, 184 La. 329, 340–41, 166 So. 94 (1935).

In sum, the Legislature had the plenary power to abolish the office. Plaintiff's claim is foreclosed, and this Court should take this case to reiterate *Francois* today: Act 15 is a constitutional abolition of the criminal clerk-of-court office.

**B. Act 15 Did Not Create a New Vacancy That Requires an Election.**

Ms. Napoleon is the clerk of court for Orleans Parish. And Plaintiff's and other Orleans Parish officials' suggestions to the contrary are irresponsible and wrong. *See* Appx.10–12. Act 15 itself dispels this notion: The "clerk of court for the parish of Orleans" is not a new office but is only the renamed title for the "clerk of the civil district court for the parish of Orleans." Act 15, § 4. And that continuing office receives the authority, functions, duties, responsibilities, records, funds, and property of the criminal clerk's office. *Id.* As Act 15 explains, "at the end of May 3, 2026," the "office of clerk of criminal district court for the parish of Orleans [was] abolished." *Id.* "Immediately thereafter," its powers and property transferred to "the clerk of the civil district court for the parish of Orleans, who shall thereafter be referred to as the clerk of court for the parish of Orleans." *Id.* And if that were not clear enough, Section 5 of Act 15 further reiterates that "the clerk of civil district court for the parish of Orleans [is] hereafter 'clerk of court for the parish of Orleans.'" Act 15, § 5.

The clerk's exercise of new powers formerly belonging to another office does not magically make a pre-existing office new. Legislation commonly gives existing offices new powers or reassigns them. As one example, Senate Bill 141 proposed this session would reassign the responsibilities of the Integrated Criminal Justice Information System Policy Board from a multi-member and multi-office commission to this Court. *See* Senate Bill 141 of the 2026 Regular Session, La. State Legislature, https://perma.cc/V5RH-HR28; *cf.* La. R.S. 15:1228.3. But no one would seriously contend that if SB 141 were adopted that every seat on this Court would be a new office requiring new elections due to these additional and reassigned powers. Act 15 is no different.

Act 15 abolished the criminal clerk of court, but it *retained* and *renamed* the civil clerk of court. The "clerk of court for the parish of Orleans" is thus not a newly created office under the plain text of Act 15. And this Court should dispel any assertion otherwise.

### III. At Minimum, the Court Should Reverse the Unlawful Mandatory Preliminary Injunction Issued After Summary Proceeding.

Assuming Plaintiff has stated a viable cause of action (he has not), *supra* Part I, his claim still should not have been adjudicated by summary proceeding because (1) it is a constitutional challenge and (2) his requested remedy is a mandatory preliminary injunction.

**A.** Constitutional challenges cannot be adjudicated by summary proceeding. "All civil actions alleging that a law is unconstitutional shall be in writing and be brought *in an ordinary proceeding*"—and only in an ordinary proceeding. La. C.C.P. art. 855.1 (emphasis added); *see* La. C.C.P. art. 851 ("ordinary" and "summary" are "different modes of procedure"). So Plaintiff's preliminary-injunction request is therefore "procedurally deficient." *Calhoun v. Landry*, 2025-00316 (La. 3/18/25), 403 So. 3d 521, 529 (Cole, J., concurring), *reh'g denied*, 2025-00316 (La. 3/22/25), 403 So. 3d 599. And it must be denied on that basis alone.

**B.** Independently, he requests a mandatory preliminary injunction that cannot issue. Because Act 15 is in effect, the criminal clerk-of-court position no longer exists and all of its responsibilities and property transferred to the clerk of court of Orleans Parish at the end of May 3, 2026. *See* Act 15, § 4. As a result, the originally requested injunction to "prohibit[] implementation" of Act 15 is effectively a request to recreate the bifurcated civil and criminal clerks and reverse the transfer of authorities, record, and properties to the civil clerk. But that sort of reinstatement order is practically just a "mandatory injunction." *See, e.g.*, *Levy v. Bd. of Supervisors of La. State Univ. & A&M Coll.*, 2025-0168 (La. App. 1 Cir. 2/20/25) ("That order provided that LSU was ordered to immediately reinstate plaintiff to his position and teaching responsibilities. Such an order constitutes a mandatory injunction[.]"), *writ denied*, 2025-00280 (La. 5/20/25), 409 So. 3d 223; *accord Harrington v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 2021-1527 (La. App. 1 Cir. 9/29/22), 2022 WL 4587873, at *2, *5 (mandatory injunction where plaintiff sought "to rescind his expulsion" and "reinstate him at LSU"), *writ denied*, 2022-1621 (La. 1/11/23), 352

So. 3d 985. But "as a matter of law, it is not possible to issue a mandatory preliminary injunction." *Deshotels v. White*, 2016-0889 (La. App. 1 Cir. 8/16/17), 226 So. 3d 1211, 1218, *writ denied*, 2017-1565 (La. 12/5/17), 231 So. 3d 628 (citing *Hyman v. Puckett*, 2015-0930 (La. App. 4 Cir. 5/4/16), 193 So. 3d 1184, 1189).

**C.** Finally, to obtain a preliminary injunction at all, Plaintiff had to "make a prima facie showing that he will prevail on the merits of the case." *Gen. Motors Acceptance Corp. v. Daniels*, 377 So. 2d 346, 348 (La. 1979). The district court refused to hold him to that burden as it refused to address Defendants' contentions that Plaintiff could not succeed in light of *Francois*. Appx.2–3; *see* Section II *supra*. Nor did the district court require Plaintiff to make any showing of irreparable harm absent a preliminary injunction. Appx.1–4; *contra Daniels*, 377 So. 2d at 348. Since he made no showing of likely success or irreparable harm, "he was not entitled to a preliminary injunction." *Daniels*, 377 So. 2d at 348.

Accordingly, the proper course is, at minimum, to grant Defendants' dilatory exception, convert this summary proceeding into an ordinary proceeding, reset the matter for trial, and deny the preliminary-injunction petition.

## CONCLUSION

This Court should exercise its plenary supervisory jurisdiction, vacate the injunction, and dismiss the petition with prejudice—and unambiguously declare that Chelsey Napoleon is the clerk of court for Orleans Parish.

Dated: May 8, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General

*/s/ Zachary Faircloth*
Zachary Faircloth (LA 39875)
  Principal Deputy Solicitor General
Elizabeth L. Brown (LA 42025)
  Assistant Solicitor General
OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd Street
Baton Rouge, Louisiana 70802
Telephone: (225) 421-4088
Facsimile: (225) 326-6098
FairclothZ@ag.louisiana.gov

*Counsel for the State of Louisiana*

16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing has this date been served upon all parties to this proceeding by email or by mailing same to each by First Class United States mail, properly addressed and postage paid, on this 8th day of May, 2026.

_/s/ Zachary Faircloth_
Zachary Faircloth (LA 39875)